UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

HENRY STIVEN CELORIO-HURTADO,

Petitioner,

v.

RAUL MALDONADO, *in his official capacity as Warden of Brooklyn Metropolitan Detention Center*, KENNETH GENALO, *in his official capacity, as Field Office Director of the Immigration and Customs Enforcement, Enforcement and Removal Operations N.Y.C. Field Office*, MARKWAYNE MULLIN, *in his official capacity as Secretary of the Department of Homeland Security*, TODD BLANCHE, *in his official capacity as Attorney General*,

Respondents.

**MEMORANDUM & ORDER**
26-CV-07096 (HG)

**HECTOR GONZALEZ**, United States District Judge:

Petitioner, a citizen of Colombia living without authorization in the United States, was detained by U.S. Immigration and Customs Enforcement ("ICE"). ECF No. 5-1 at 17; ECF No. 5-2 at 50.[1] While in custody in New Jersey, he filed a petition for a writ of habeas corpus, arguing that his detention under 8 U.S.C. § 1225(b) was invalid and violated due process. ECF No. 5-2 at 29–32. The district court partially granted the petition, denied Petitioner release, and ordered an individualized bond hearing. ECF No. 5-2 at 63–64. At Petitioner's hearing, the Immigration Judge ("IJ") denied bond based on danger and flight risk. *Id.* at 64. Two weeks

[1] Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations. The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

later, Petitioner was transferred to the Brooklyn Metropolitan Detention Center ("MDC"), where he filed the instant petition. ECF No. 1 at 7. For the reasons set forth below, his petition is DENIED.

## BACKGROUND[2]

In 2022, ICE detained Petitioner after he unlawfully entered the United States from Mexico. ECF No. 5-4 at 1–2. Following a credible fear interview, ICE granted Petitioner humanitarian parole and released him. *Id.* at 2.

In 2023, Petitioner was arrested and charged in New York Criminal Court with robbery and grand larceny. *Id.* at 3. He later pleaded guilty to disorderly conduct and was sentenced to time served. *Id.* Petitioner was required to report to ICE but never appeared. *Id.* Petitioner was also required to appear for a credible fear interview with U.S. Citizenship and Immigration Services ("USCIS") in 2026. He failed to appear for that, too. ECF No. 5-2 at 52.

On June 21, 2026, ICE issued a Form I-200 warrant for Petitioner's arrest. ECF No. 5-4 at 3. Petitioner was arrested the following day. *Id.* at 3–4. The next day, ICE transferred Petitioner to a detention facility in New Jersey. *Id.* at 4. In September, ICE issued Petitioner a Form I-862 Notice to Appear ("NTA"). ECF No. 5-1 at 34.

While detained in New Jersey, Petitioner filed a petition for a writ of habeas corpus. ECF No. 5-2 at 2. He argued that he had been unlawfully detained under Section 1225(b), but was instead entitled to a bond hearing under 8 U.S.C. § 1226(a). *Id.* at 29–30. He also argued that

---

[2] The Court relies on evidence submitted by the parties in outlining the facts relevant to this Order. The facts recited here are undisputed unless otherwise noted. *See O.F.B. v. Maldonado*, 810 F. Supp. 3d 394, 398 n.2 (E.D.N.Y. 2025).

his mandatory detention under Section 1225 without the opportunity for a bond hearing violated due process. *Id.* at 17, 30–32.

The United States District Court for the District of New Jersey ("D.N.J.") granted the petition in part. ECF No. 5-2 at 63–64. Although the court held that Petitioner was detained under Section 1226(a), it declined to order his release. *Id.* Instead, it concluded that the "appropriate remedy" was a bond hearing. *Id.* The court "d[id] not reach Petitioner's due process argument regarding USCIS's delay." *Id.* A week later, an IJ conducted an individualized custody determination and denied Petitioner bond on both danger and flight risk grounds. ECF No. 5-1 at 38–39. Following his bond hearing, the D.N.J. held that Petitioner was not entitled to further relief and closed his case. ECF No. 5-2 at 64.

Thereafter, Petitioner was transferred to the MDC, where he remains detained pursuant to Section 1226(a). ECF No. 5-4 at 6. On November 3, 2026, Petitioner filed a second habeas petition. ECF No. 1. The government filed its response and Petitioner filed a reply. ECF Nos. 5 & 7.

## LEGAL STANDARD

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 562 U.S. 86, 91 (2011); *see also Ozturk v. Hyde*, 136 F.4th 382, 393 (2d Cir. 2025). A petition for a writ of habeas corpus under Section 2241, "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-cv-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing

*Demore v. Kim*, 538 U.S. 510, 516–17 (2003)). "[I]t is the petitioner who bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).

## DISCUSSION

In his second petition, Petitioner asserts two grounds for habeas relief. First, he argues that his detention violates due process because ICE issued his NTA after issuing the arrest warrant, and because it failed to conduct a "contemporaneous, individualized custody assessment" as required under Section 1226(a) and its implementing regulations. ECF No. 1 at 8–9, 16. Second, he argues that his almost four-month-long detention is unreasonably prolonged, also in violation of due process. *Id.* at 16–17. He requests release or, alternatively, a burden shifted bond hearing. *Id.* at 17–18. The government maintains that the first claim is barred by the abuse of the writ doctrine, and that the second fails on the merits. ECF No. 5 at 4–7. The Court analyzes both of Petitioner's claims in turn.

### I. Section 1226(a) Claim

The Court agrees that Petitioner's first claim—that ICE's failure to follow Section 1226(a)'s procedures deprived him of due process—is barred by the abuse of the writ doctrine. Alternatively, it fails on the merits.

The abuse of the writ doctrine holds that "a court need not entertain a petition that abuses the habeas process." *Esposito v. Ashcroft*, 392 F.3d 549, 550 (2d Cir. 2004). Abuse of the writ is a substitute for res judicata in the habeas context. *Muniz v. United States*, 236 F.3d 122, 126 (2d Cir. 2001). "One frequently recognized indicator of abusiveness is whether the petitioner could have asserted his present claims in his prior petition." *Esposito*, 392 F.3d at 550. "[T]he

government bears the burden of pleading abuse of the writ," which it does if, "with clarity and particularity, it notes petitioner's prior writ history, identifies the claims that appear for the first time, and alleges that petitioner has abused the writ." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). The petitioner must then "show that some objective factor external to the defense impeded counsel's efforts to raise the claim." *Id.* at 493. If petitioner cannot show cause, his failure to raise the claim in an earlier petition may be excused if he can show that a "fundamental miscarriage of justice" would result if the court did not consider the claim. *Id.* at 494–95.

Respondents have satisfied their initial burden to show abuse of the writ. In their response, Respondents detail Petitioner's prior writ history and include his previous petition. ECF No. 5; ECF No. 5-2 at 2–32. The response also identifies the claims Petitioner raises that could have been brought in the first petition. ECF No. 5 at 5. Specifically, Respondents argue that "Petitioner could have raised his objections that his arrest warrant was invalid due to the lack of an NTA and his objection that he was detained without an initial custody determination" under Section 1226(a). *Id.*

The Court agrees that these are new claims that could have been asserted in the first petition. Petitioner concedes that "the claims were characterized differently," but insists they were fundamentally the same. ECF No. 7 at 2. Not so. Petitioner's new claims arise under a different provision and rely on a different set of facts, namely that ICE violated due process by issuing the NTA after arresting him. ECF No. 1 at 16. These arguments appear nowhere in his first petition. His request for a pre-detention custody determination based on Section 1226's implementing regulations is likewise new. Notably, the D.N.J. in its order characterized

Petitioner's original due process claims as "regarding USCIS's delay," rather than concerning Section 1226. ECF No. 5-2 at 63–64.[3]

Petitioner does not adequately explain why he failed to raise his claims in the first petition. His argument that the "second petition implicated different facts" is unavailing. ECF No. 7 at 2. In his first petition, he argued that Section 1226 governed his detention, and he was presumably aware of its procedural requirements. ECF No. 5-2 at 8–16. Because ICE did not issue the NTA until September, Petitioner knew that his arrest may have been procedurally improper when he filed his first petition in July. *Id.* at 62. Petitioner did not need to wait for the D.N.J. to hold that Section 1226 governed to argue that his detention was improper under that provision. Courts in that District had already held that Section 1225 did not apply to aliens like Petitioner. *See Bethancourt Soto v. Soto*, 807 F. Supp. 3d 397, 409 (D.N.J. 2025); *Lucena v. Soto*, No. 26-cv-00143, 2026 WL 160661, at *2 (D.N.J. Jan. 21, 2026). Respondents have therefore pleaded abuse of the writ "with clarity and particularity." *See Montoya-Quintero*, 2026 WL 2594228, at *3 (similar).

Because Respondents have satisfied their initial burden, Petitioner must show an objective factor that impeded his ability to raise the claim or establish that a fundamental miscarriage of justice would result if the Court does not reach the merits. He presents no evidence of the former. Nor could he, as he has been represented by counsel at both habeas proceedings. ECF No. 5-2 at 61. As for miscarriage of justice, Petitioner does not contest that

[3] It is not clear Plaintiff would be able to disprove abuse of the writ even if he had previously raised the same claims and the D.N.J. declined to adjudicate them on the merits. *See Montoya-Quintero v. Warden in Charge of ICE Det.*, No. 26-cv-05105, 2026 WL 2594228, at *3 (E.D.N.Y. Sept. 2, 2026) (applying abuse of the writ doctrine even when "the merits of the claims raised in [the first petition] were not adjudicated" where the petitioner "rais[ed] a Fifth Amendment claim for a second time" without showing cause).

he can appeal the D.N.J.'s order denying him release, or that it retains jurisdiction over his case. *Montoya-Quintero*, 2026 WL 2594228, at *3 ("Petitioner is not foreclosed from reopening *Montoya-Quintero I* and no 'fundamental miscarriage of justice' would result from the Court's failure to entertain the instant Petition."). These claims are therefore barred as an abuse of the writ.

Were it otherwise, his claims still fail on the merits. Petitioner argues that he must be released because his initial arrest occurred before ICE issued the NTA. ECF No. 1 at 16; *see* 8 C.F.R. § 1236.1(b)(1) ("At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody"). But even assuming ICE violated a regulation, that fact would not entitle Petitioner to release.

"An alien may obtain relief based on the violation of a regulation without a showing of prejudice only if the regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute." *Gagea v. Maldonado*, No. 26-cv-4817, 2026 WL 2859032, at *2 (E.D.N.Y. Sept. 23, 2026). Where, as here, the regulation relates to "agency-created rights and privileges," agency action may be invalidated only upon a showing of prejudice to Petitioner. *See id.* (the sequencing rule embodied in Section 1236.1(b)(1) does not protect a fundamental right). Whatever prejudice existed when ICE arrested him was cured when it presented Petitioner with an NTA and gave him an individualized bond hearing. *See Lupercio v. Maldonado*, No. 26-cv-2135, 2026 WL 2339165, at *3 (E.D.N.Y. July 5, 2026); *Gutama Gutama v. Maldonado*, No. 26-cv-6556, 2026 WL 3152059, at *3 (E.D.N.Y. Oct. 21, 2026) ("And if Petitioner were released, wheels would spin for no purpose: ICE could simply rearrest

him now than an NTA has been issued.”). ICE’s regulatory violation does not entitle Petitioner to release.

For the foregoing reasons, Petitioner’s first claim fails.

## II. Prolonged Detention Claim

Petitioner’s second claim—that his “prolonged detention” entitled him to release or, alternatively, a burden shifted bond hearing—likewise fails. ECF No. 1 at 16–17.

In support of his argument, Petitioner relies on *Velasco Lopez v. Decker*, 978 F.3d 842, 855 (2d Cir. 2020). ECF No. 7 at 4. There, the Second Circuit ordered a burden shifted bond hearing for an alien who had been detained pursuant to Section 1226(a) for fifteen months “with no end in sight.” *Velasco Lopez*, 978 F.3d at 846. Although the court did not establish a bright-line rule for when due process entitles an individual detained under Section 1226(a) to a burden shifted hearing, it held that “a presumptively constitutional period of detention does not exceed six months.” *Id.* at 855 n.13.

Here, Petitioner has been detained for less than five months. ECF No. 5-1 at 17. Courts in this District frequently deny new bond hearings when the petitioner has been held for less than the presumptively constitutional period. *See Lupercio v. Maldonado*, No. 26-cv-2135, 2026 WL 2339165, at *3 (E.D.N.Y. July 5, 2026) (“Here, petitioner has been held for five months. That is far less than the fifteen months in *Velasco-Lopez* and also less—even if marginally—than the presumptively constitutional period.”); *Romero-Arriaza v. Maldonado*, No. 26-cv-03488, 2026 WL 2332831, at *3 (E.D.N.Y. Aug. 5, 2026) (“Petitioner has been held for only about three months—within the presumptively constitutional period.”).

Moreover, Petitioner has already received an individualized bond hearing ordered by a district court, and the IJ found that he is a danger to the community and a flight risk. Both

findings are supported by Petitioner's criminal history and previous failure to appear when required. ECF No. 5-2 at 51–52; ECF No. 5-4 at 3. Petitioner's bond hearing was only one month ago, and nothing appears to have occurred in the interim to justify a new proceeding. *Id.* at 64. The D.N.J. concluded that Petitioner was not entitled to additional relief beyond his individualized bond hearing, and this Court sees no reason to second-guess that judgment. As the D.N.J. noted, Petitioner may always "seek appropriate relief in a new action should circumstances warrant." *Id.* Respondents are therefore put on notice that although Petitioner's current detention does not violate due process, "the longer detention continues, the greater the need for the Government to justify its continuation." *Velasco Lopez*, 978 F.3d at 855. The government is therefore ordered to provide an update by December 17, 2026, regarding the status of Petitioner's removal proceedings.

## CONCLUSION

For these reasons, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is DENIED. The government is directed to provide an update by December 17, 2026, regarding the status of Petitioner's removal proceedings. For the avoidance of doubt, nothing in this Order shall be construed as a determination of Petitioner's ability to seek an individualized bond hearing before an IJ in the future. If Petitioner is entitled to such a hearing, the IJ shall meaningfully consider alternatives to detention and Petitioner's ability to pay if a monetary bond is set, and the government will have the burden of showing by clear and convincing evidence that Petitioner is a danger to the community or a flight risk. *See J.C.G. v. Genalo*, No. 24-cv-08755, 2025 WL 88831, at *7 (S.D.N.Y. Jan. 14, 2025) (collecting cases where courts ordered that the government bear the burden of demonstrating by clear and convincing evidence that discretionary detention was justified); *see also Mendoza Raymundo v. Almodovar*, No. 26-cv-

02304, 2026 WL 1480372, at *5 (E.D.N.Y. May 27, 2026) (same). The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close this case.

SO ORDERED.

*/s/ DRAFT*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
November 18, 2026